# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| LEXOS MEDIA IP, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. <u>2:22-cv-00311</u> |
| | § | |
| NIKE, INC., | § | |
| | § | |
| *Defendant.* | § | |
| | § | |

## PLAINTIFF LEXOS MEDIA IP, LLC'S
## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Lexos Media IP, LLC ("Lexos Media IP") files this Complaint for patent infringement against Defendant Nike, Inc. ("Nike"), and alleges as follows:

### PARTIES

1.      Plaintiff Lexos Media IP, LLC is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business located at 555 Republic Drive, 2nd Floor, Plano, Texas 75074-5481.  Lexos Media IP is the intellectual property holding company of Lexos Media, Inc. ("Lexos Media") and owns intellectual property associated with the business of that company.  Lexos Media IP has had its principal place of business located in Plano, Texas since 2015.

2.      Lexos Media was founded in 2009.  Lexos Media is a digital advertising technology company that pioneered the use of dynamic cursor modification to promote the online purchase and use of products and services likely of interest to users of e-commerce websites.  Lexos Media has provided a technology framework for delivering online advertising in which images and content are deployed in connection with a cursor.  Lexos Media has provided this technology framework through two divisions -- AdBull and Cursor Marketing -- both of which provided

technology that could be used to modify an Internet user's cursor to display content such as an image or other message to promote the online purchase and use of products and services.  Lexos Media IP has been engaged in licensing this technology both in the online marketing space as well as other fields.

3.  Defendant Nike is an Oregon corporation with its principal executive offices located at One Bowerman Drive, Beaverton, Oregon 97005.  Nike may be served with process through its registered agent United Agent Group Inc., 5708 SE 136th Ave., Ste. 2, Portland, Oregon 97236.

## JURISDICTION AND VENUE

4.  This is an action for patent infringement arising under the patent laws of the United States of America, Title 35, United States Code.

5.  This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6.  Nike is subject to the specific personal jurisdiction of this Court because Lexos Media IP's claims for patent infringement against Nike arise from Nike's acts of infringement in the State of Texas.  These acts of infringement include operating an interactive website using the patented inventions, making this website available to persons in the State of Texas, and facilitating the sale of products and services through that website to those persons.

7.  Nike's principal business activity is the design, development and worldwide marketing and selling of athletic footwear, apparel, equipment, accessories and services.  Nike is the largest seller of athletic footwear and apparel in the world.  Nike sells its products directly to consumers through Nike-owned retail stores and digital platforms (which Nike refers to collectively as its "NIKE Direct" operations).  Nike's digital commerce website is located at *www.nike.com* (the "Nike Website").

8.     Nike operates 23 stores in Texas and has hundreds of employees located in Texas.  The activities conducted by Nike and its employees at these facilities located in Texas are substantially related to Nike's infringing activities conducted in this state.    Nike operates its business of selling its products directly to consumers through retail stores and digital platforms, including the Nike Website, in an integrated and cohesive manner, which Nike refers to collectively as its "NIKE Direct" operations. For example, Nike allows customers who purchase products through the Nike Website to return those products at a Nike store.

9.     Therefore, this Court has personal jurisdiction over Nike under the Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE § 17.042.

10.     Nike also has committed the acts of infringement alleged herein and has regular and established places of business in the Eastern District of Texas.  In particular, Nike has stores located in Allen, Plano and Tyler, Texas, all places located in this district.  Since at least 2016, Nike made available and offered its Nike Website to individuals located in the United States and the Eastern District of Texas.  These facilities located in the Eastern District of Texas are physical, geographical locations in the district from which the business of Nike is carried out.  These facilities located in the Eastern District of Texas are regular and established places of business of Nike.  Furthermore, these facilities located in the Eastern District of Texas are places of business of Nike.

11.     Nike owns and operates these facilities or, alternatively, leases these facilities.  Nike directs and controls the operation of those facilities conducted for the benefit of Nike.  The activities and operations conducted at these facilities for the benefit of Nike are a regular and established part of the business of Nike.  The individuals conducting these activities and operations

for the benefit of Nike are employees of Nike or, alternatively, are operating under the direction and control of Nike when conducting these activities and operations.

12.     The Nike Website provided to these individuals implemented features and functionality that infringed the asserted patents identified below ("Asserted Patents"), and Nike's activities in providing the infringing features and functionality to these individuals in the Eastern District of Texas also infringed the Asserted Patents.

## THE ASSERTED PATENTS

13.     On November 30, 1999, the United States Patent and Trademark Office issued United States Patent No. 5,995,102 ("the `102 Patent") entitled "Server system and method for modifying a cursor image," a true copy of which is attached as Exhibit 1.

14.     On September 12, 2000, the United States Patent and Trademark Office issued United States Patent No. 6,118,449 ("the `449 Patent") entitled "Server system and method for modifying a cursor image," a true copy of which is attached as Exhibit 2.

15.     Lexos Media IP is the owner by assignment of these Asserted Patents and owns all right, title, and interest in the Asserted Patents, including the right to sue for and recover all past, present, and future damages for infringement of the Asserted Patents.

## THE INNOVATION OF THE ASSERTED PATENTS

16.     The Asserted Patents are directed to improvements in the field of online advertising, and provide technical solutions to problems being encountered in that burgeoning field.  In order to put the innovation of the Asserted Patents into perspective, it bears emphasis that the application for the asserted `102 Patent was filed in June 1997, a mere few years after online advertisements emerged in the ecommerce marketplace.  *See* https://en.wikipedia.org/wiki/Online_advertising.

17.     At the time of the invention underlying the Asserted Patents, there were several drawbacks to prevalent forms of online advertising, such as banner advertisements, web page "frames," and "self-appearing" advertising screens.   Thus, as the Asserted Patents emphasized, at the time of the invention of the Asserted Patents, "[t]here is a need for a simple means to deliver advertising elements without the annoyance of totally interrupting and intrusive content delivery, and without the passiveness of ordinary banner and frame advertisements which can be easily ignored."

18.     The Asserted Patents provided a specific technical solution to improve online advertising technology and overcome these problems.   The specification of the Asserted Patents pointed out that, while it was not new at the time for pointers and cursors to change shape, "[i]n conventional systems, the appearance of the cursor or pointer does not change to correspond with on-line content being displayed on the screen."

19.     The claims of the Asserted Patents explain how the invention improves on conventional methods of online advertising.   In particular, the Asserted Patents disclosed "a server system for modifying a cursor image to a specific image displayed on a video monitor of a remote user's terminal for the purposes of providing on-screen advertising."

20.     The claims of the Asserted Patents specifically teach how the invention works to provide the improved online advertising technology.   A web browser retrieves a web page stored on a server that is then transmitted to and viewed by a user.   The retrieved web page contains a set of predetermined instructions referred to as "cursor display instructions." The browser interprets the information contained in cursor display instructions and instructs the operating system of the user's terminal to bring about the change in appearance of the cursor within the web page.   As the Asserted Patents explain, "the server system provides

certain information that causes the cursor image on the video monitor of the user terminal to display an image as specified by the server system. As a result, the server system remotely defines and manages the shape and appearance of the cursor image in accordance with a pre-specified condition."

21.     The claims of the Asserted Patents contain steps or elements that embody this specific process for implementing the cursor modification invention and improving online advertising. The claims focus on a specific means or method that improves online advertising technology, and are not directed to a desired result or effect that itself merely employs generic processes and machinery. They claim a technological solution to the technological problems and drawbacks encountered in the prior art methods for creating effective online advertising – a specific process and system for modifying the appearance of a cursor implemented on the display of a user's computer. The asserted claims are directed to a new and useful technique for performing online advertising. They are not directed to a law of nature, natural phenomena, or a business method or algorithm.

## THE ESTABLISHED VALIDITY OF THE ASSERTED PATENTS

22.     In 2018, Ralph Lauren ("RL") petitioned the U.S. Patent Trial and Appeal Board (the "PTAB") for *inter partes* review of the `102 and `449 Patents.   In particular, RL petitioned for *inter partes* review of claims 70-73 of the `102 Patent and claims 1-3, 5-7, 12-15, 27-29, 31-33, 38-41, 53-56, 58-63, 72-75, and 77-82 of the `449 patent. Although the PTAB cancelled some of the claims, in two final written decisions it found that RL had not shown that the claims 70 and 72 of the `102 Patent and claims 1-3, 5-7, 12-15, 28, 29, 31, 32, 38, 39, 53-56, 58-63, 73-75, and 77-80 of the `449 Patent are unpatentable.  RL appealed the PTAB's final written decisions, and the Federal Circuit affirmed those decisions.

**THE CURSOR MODIFICATION ACCUSED INSTRUMENTALITY**

23.     One of the innovations Nike has used to build the popularity and profitability of Nike Websites is the cursor modification technology covered by the Asserted Patents (the "Accused Instrumentality").

**FIRST CLAIM FOR RELIEF**
**(Infringement of the `102 Patent)**

24.     Nike has directly infringed Claim 72 of the `102 Patent by using the method claimed therein with respect to the Nike Website.  In particular, Nike has infringed Claim 72 by using the claimed method when providing the web pages to individuals for use with the Nike Website that operate to modify the appearance of those pages relating to the display of cursors.

25.     Since at least 2016, Nike has used a method via the Accused Instrumentality for modifying an initial cursor image displayed on a display of a user terminal connected to at least one server owned, operated and/or controlled by Nike.

26.     The method performed by Nike via the Accused Instrumentality has included the step of Nike receiving a request to provide a web page from the Nike Website to a user terminal.

27.     The method performed by Nike via the Accused Instrumentality has included the step of Nike transmitting and providing a web page from the Nike Website to a user terminal in response to the request for a web page.

28.     The web page provided by Nike from the Nike Website via the Accused Instrumentality has included one or more instructions to modify an initial cursor image and contains data corresponding to a specific image displayed, or to be displayed, on a user's terminal that is a modification of an initial cursor image.

29.     The method performed by Nike via the Accused Instrumentality for the Nike Website has included the step of Nike providing instructions and code that has controlled and

transformed the initial cursor image displayed on the display of the user's terminal into a specific image with a particular shape and appearance in response to Nike's instructions.

30.     The transformed specific image resulting from Nike's infringing process has included content from the Nike Website corresponding to at least a portion of the information that is to be displayed on the display of the user's terminal.

31.     An example of the display of a web page provided by the Nike Website to a user's terminal before the initial cursor is transformed or modified appears in Figure 1 below.



Figure 1

The initial cursor image appears on the user's terminal as the arrow in Figure 1.

32.     The transformed specific image resulting from Nike's infringing process is illustrated in Figures 2A and 2B below.  Figure 2A is a screenshot of a web page displayed by the Nike Website reflecting the claimed specific image (the slightly shaded and transparent rectangle surrounding the image of the magnifying cursor image appearing in the middle of the screenshot) and the claimed corresponding portion of the web page displayed in the images and text on the display of the user's terminal appearing to the right and to the left of the specific image in the screenshot.



Figure 2A

33.     Figure 2B also displays a transformed specific image resulting from Nike's infringing process.   Figure 2B is a screenshot of a web page displayed by the Nike Website reflecting the claimed specific image (the slightly shaded and transparent rectangle surrounding the image of the magnifying cursor image appearing in the middle of the screenshot) and the claimed corresponding portion of the web page displayed on the display of the website user's terminal as an enlargement of the image appearing within the slightly shaded rectangle to the right of the specific image in the screenshot.   This web page is transmitted to the user's terminal for display after the user clicks on the image of the cursor appearing in the slightly shaded rectangle.



Figure 2B

34.     Figure 3 below is another example of the modification of the initial cursor to a "specific image" similar to Figure 2B.



Figure 3

35.     The web page depicted in Figure 1 reflects the image of a product displayed on the user terminal's display when the user has used the Nike Website before the initial cursor is transformed or modified.  The web pages depicted in Figures 2A and 2B reflect the modification

of the initial cursor to a "specific image," which comprises the slightly shaded and transparent rectangle surrounding the image of the magnifying glass cursor depicted in these figures.  This modification is a consequence of the user moving the cursor image over the display of the shoe on the user's terminal.

36.     Nike's instructions have indicated code provided and controlled by Nike that is operable to process the instructions to modify the initial cursor image to the image in the shape and appearance of the specific image responsive to movement of the cursor image over a display of at least a portion of the information to be displayed on the display of the user's terminal.

37.     The slightly shaded and transparent rectangle surrounding the image of a magnifying glass is not a generic cursor image.  Instead, it is an image that represents some or all of the subject matter being displayed on the website.  In particular, the slightly shaded and transparent rectangle is not merely the image of a hand, arrow or other form of functional cursor, but is an image that highlights and draws attention to the portion of the product or subject matter displayed on the web page that appears within the slightly shaded, transparent rectangle.  That highlighting of, and attention drawn to, a portion of the product or subject matter displayed on the web page is enhanced by the shading and enlarged display of that portion of the product or subject matter appearing within the slightly shaded and transparent rectangle to the right and at times, to the left of the specific image.  The specific image generated by the Accused Instrumentality relates the content displayed within the slightly shaded and transparent rectangle to the content being displayed on the screen.

38.     To the extent that any required steps of the claim occurred on a device in the possession, custody or control of and used by a third party, Nike performed those steps because it initiated and controlled the performance of those steps.

39.     Since 2016, Nike has continued to use the method described and depicted above with respect to the Nike Website for years.  For example, Figure 3 reflects that Nike has used the cursor modification technology described and depicted above since 2016.

40.     The duty to mark under 35 U.S.C. § 287 is inapplicable to the asserted method claims of the `102 Patent.  There is no applicable marking requirement that has not been complied with.

41.     Lexos Media IP has been damaged by Nike's activities that infringed Claim 72 of the `102 Patent.

**SECOND CLAIM FOR RELIEF**
**(Infringement of the `449 Patent)**

42.     Nike has directly infringed Claims 1, 38, and 53 of the `449 Patent by making and using those patented inventions in connection with providing individuals with access to the Nike Website and to shop for products and services on the website.  By doing so, Nike has infringed Claims 1 and 38 of the `449 Patent by making and using the claimed system and making the Nike Website available to others for use.  In addition, Nike has infringed Claim 53 of the `449 Patent by using the claimed method when providing the Nike Website for use by others.

43.     Since at least 2016, Nike has made and used the accused server system for modifying a cursor image to a specific image having a desired shape and appearance displayed on a display of a remote user's terminal.

44.     Since at least 2016, the Nike Website has transmitted a web page to a user's terminal in response to a request from the user terminal for the web page.

45.     Since at least 2016, the Nike Website has provided to the user terminal a web page that has included data corresponding to the specific image to be displayed on the user's terminal.

46.     Since at least 2016, the Nike Website has provided to the user terminal a web page that has included code which is operable to modify a cursor image on the display of the user's terminal.

47.     Since at least 2016, the server for the accused Nike Website has included a server computer for transmitting a web page to a remote user terminal which has included one or more instructions and an indication of the location of cursor image data.

48.     Since at least 2016, web pages transmitted by the Nike Website have contained instructions and code that have been operable to cause the user terminal to display a modified cursor image on the user's display in the shape and appearance of the specific image, reflected in Figures 2-3 above.

49.     Since at least 2016, the specific image displayed by the Nike Website on the user's terminal has comprised information which has included content corresponding to at least a portion of the information to be displayed on the display of the user's terminal.

50.     Since at least 2016, the code of the Nike Website has been operable to process the instructions to modify the cursor image to an image in the shape and appearance of the specific image in response to movement of the cursor image over a display of at least a portion of the information to be displayed on the display of the user's terminal.

51.     Since at least 2016, the resulting specific image displayed by the Nike Website has been related to at least a portion of the information to be displayed on said display of the remote user's terminal.

52.     Figures 2A, 2B and 3 set forth in Paragraphs 32-33 above depict examples of the claimed specific image and the claimed corresponding portion of the specified content information displayed by the Nike Website on the display of the website user's terminal since at least 2016.

53.     Nike, through the Nike Website, has used the claimed system for purposes of infringement and has put the claimed system into service.  In particular, Nike has controlled each element of Nike Website systems and the system as a whole and has obtained a benefit from doing so in the form of improved marketing of products and services sold through the Nike Website. Nike has provided and controlled any functionality required by the claimed system that has taken place on the user/customer's computer.

54.     Lexos Media IP incorporates by reference herein the allegations above in Paragraphs 25-38.

55.     Since at least 2016, Nike has continued to put the claimed system into service through the Nike Website.

56.     The duty to mark under 35 U.S.C. § 287 is inapplicable to the asserted method claim of the `449 Patent, and there are no unmarked "patented articles" that were sold or offered for sale by Lexos Media IP or its licensees of the `449 Patent that were subject to § 287.  In addition, Lexos Media marked its website, *lexosmedia.com*, with the patent numbers of the Asserted Patents. Consequently, Lexos Media IP has complied with the marking requirement under § 287, to the extent it is applicable.

57.     Lexos Media IP has been damaged by Nike's infringing activities.

## DEMAND FOR JURY TRIAL

58.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Lexos Media IP hereby demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Lexos Media IP requests the following relief:

(a)     A judgment in favor of Lexos Media IP that Nike has directly infringed one or more claims of the Asserted Patents;

(b)     A judgment and order requiring Nike to pay Lexos Media IP damages adequate to compensate for infringement under 35 U.S.C. § 284, which, in no event shall be less than a reasonable royalty for its usage made of the inventions of the Asserted Patents, including pre- and post-judgment interest and costs;

(c)     A judgment awarding Lexos Media IP post-judgment royalties to the extent applicable; and

(d)     Any and all such further necessary or proper relief as this Court may deem just and equitable.

Dated: August 11, 2022

Respectfully submitted,

**BUETHER JOE & COUNSELORS, LLC**

*/s/ Eric W. Buether*
Eric W. Buether (Lead Counsel)
State Bar No. 03316880
Eric.Buether@BJCIPLaw.com
Christopher M. Joe
State Bar No. 00787770
Chris.Joe@BJCIPLaw.com
Kenneth P. Kula
State Bar No. 24004749
Ken.Kula@BJCIPLaw.com

1700 Pacific Avenue
Suite 4750
Dallas, Texas 75201
Telephone:      (214) 466-1271
Facsimile:      (214) 635-1827

**ATTORNEYS FOR PLAINTIFF**
**LEXOS MEDIA IP, LLC**